## IN RE SATTERTHWAITE.

(No. 3,930.)

(Submitted October 2, 1916. Decided October 4, 1916.)

[160 Pac. 346.]

*Habeas Corpus — Juvenile Delinquents — Petition — Citation—
Jury Trial—Judgment.*

Juvenile Delinquents—Petition—Contents.
    1. The petition to have a juvenile delinquent committed under the provisions of Chapter 122, Laws of 1911, must, among other things, charge that the persons having the custody of the child are unfit, unwilling or unable to care for, educate, control or discipline it, or that their consent has been obtained that the delinquent might be taken from them.

Same—Citation—Failure to Serve—Effect.
    2. The person from whose custody a child is intended to be taken under the Juvenile Delinquent Act must be made a party and receive notice by citation; failure to give it will render subsequent proceedings void.

Same—Jury Trial.
    3. Where the mother of an alleged delinquent daughter was not accorded the opportunity to exercise, or waive, the right to a jury trial conferred by Chapter 122, Laws of 1911; and the record failed to disclose whether a jury trial was had, and whether the accused waived

(550)

her right to such a trial or was apprised of it, the judgment committing her to a reformatory institution *held* void on *habeas corpus.*

Same—Judgment—Contents.

4. Before a delinquent child can be taken from its parent or guardian, the court must adjudge the unfitness, unwillingness or inability of the latter to properly care for it, and that it is for the best interest of the child and for the people of the state that it be given over to the custody of the state.

[As to validity of statute creating juvenile court, see note in **Ann. Cas. 1914A, 1227.**]

Application by Margaret Satterthwaite for a writ of *habeas corpus* in behalf of Mamie Satterthwaite. Complainant ordered released from custody.

*Mr. D. H. Wittenberg,* for Complainant.

*Mr. Wm. H. Poorman,* Assistant Attorney General, for the State; *Mr. J. A. Walsh,* appearing as *Amicus Curiae.*

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On April 12 of this year, the chief probation officer of Silver Bow county presented to the district court a petition charging Mamie Satterthwaite, a minor child under the age of seventeen, with delinquency. A judgment was rendered finding the allegations of the petition to be true, and the child was committed to the House of the Good Shepherd at Helena, an institution for delinquent children. Upon application of the mother of the child this court issued a writ of *habeas corpus,* and, return thereto having been made, the matter was submitted for decision.

It is the contention of the mother that the record of the trial court discloses on its face such a disregard for the statute or such deviations from the procedure prescribed by law, as to render the judgment void.

1. *The Petition.* The Act relating to juvenile delinquents was [1] approved March 7, 1911. (Laws 1911, Chap. 122, p. 320.) Section 4 provides that a proceeding for the trial of an alleged delinquent shall be instituted by a duly verified petition filed with the clerk of the court. Section 5 provides for the contents

of the petition. It must charge the delinquency of the child and, in addition thereto, that the parents, custodian or guardian of the child "are unfit or improper guardians, or are unwilling or unable to care for, protect, train, educate, control or discipline such child or that the parent, parents, guardian or custodian consent that such child be taken from them. The petitioner shall set forth either the name or that the name is unknown to the petitioner (a) of the person having the custody of such child; and (b) of each of the parents, or the surviving parent of a legitimate child, or of the mother of an illegitimate child, or (c) if it allege that both of said parents, or such mother is dead, then of the guardian, if any, of such child; (d) if it alleges that both parents are, or that such mother is dead, and that no such guardian of such child is known to petitioner, then of a near relative, or that none such is known to petitioner. The petition shall also state the residence of such parties, as far as the same are known to such petitioner. All persons named in such petition shall be made defendants by name and shall be notified of such proceedings in the same manner as is or may hereafter be required in civil proceedings by the laws of this state."

The petition filed in the district court recited that Mamie Satterthwaite was then in the care, custody and charge of her parents, residents of Silver Bow county. The name and residence address of the mother were given, but the mother was not made a party defendant as the statute requires. The petition is insufficient, in that it fails to charge that the parents of the child are unfit or improper guardians of the child, or unwilling or unable to care for, protect, train, educate, control or discipline the child. Neither does the petition recite that the parents consented that the child might be taken from them. These proceedings are purely statutory, and substantial compliance with the terms of the statute is essential to the validity of the proceedings. In the present instance there was such failure to follow the plain mandate of the law as amounted substantially to a disregard of it.

2. *The Citation.* Section 5 of the Act provides that upon fil-
ing the petition a citation shall issue to the child's custodian to
[2]    show cause, and to all persons made defendants to appear
and answer the petition on the return day. The record of the
trial court discloses that notwithstanding the name and place of
residence of this child's mother were known on April 12, the
citation was not served upon her until April 29. The record
further recites that the hearing or trial of the charges against
the child was had on April 12, or sixteen days before the mother
was notified.

In requiring service of the citation before the hearing is had,
the statute has a real purpose in view even aside from any con-
sideration of the question of due process of law:

The parent within the jurisdiction of the court whose resi-
dence is known must be made a party to the proceedings. Upon
this the statute does not admit of discussion. The mother of
this child was not made a party and never had her day in court.
If the statute had been complied with in this respect, then the
mother would have been entitled to the notice provided by the
Act before the hearing or trial was had.

(a) She was entitled to a reasonable time to prepare her de-
fense, if any she had.

(b) If the court found the case to be a proper one, the child
might be returned to her mother, for the declared purpose of
the Act is ''that no child should be taken away or kept out of his
home or away from his parents or guardian any longer than is
reasonably necessary to preserve the welfare of the child and the
interest of this state'' (sec. 14, p. 332); and the mother had
the right to an opportunity to show, if she could, that this was
such a proper case for the return of her child to her as is con-
templated by the statute.

(c) The parents of an alleged delinquent ''may be compelled
to perform their moral and legal duty in the interest of the
child'' (sec. 24, p. 337); but a judgment of this character could
not operate upon a parent who was not given a chance to be
heard.

Other reasons might suggest themselves, but in any event in the wisdom of the legislature it was deemed indispensable that the notice be given, and for the failure to give it in this instance no excuse is suggested.

3. *The Trial.* Either the accused child or its parent "shall [3] have the right to demand a trial by jury which shall be granted as in other cases unless waived" (sec. 3, p. 321). The right to a jury trial is secured. It can be waived only in manner provided by law. (*Chessman* v. *Hale,* 31 Mont. 577, 3 Ann. Cas. 1038, 68 L. R. A. 410, 79 Pac. 254.) The mother of this child was not even accorded the opportunity to exercise or waive the right which the statute confers, and the record fails to disclose whether a jury trial was had; whether the child waived her right, or whether she was apprised of it.

4. *The Judgment.* Before a delinquent child can be taken [4] from its parents and given over to the custody and control of the state, the court must first adjudicate that the parents of such child "are unfit or improper guardians, or are unable or unwilling to care for, protect, educate or discipline such child, and shall further find that it is for the best interest of such child and for the people of this state that such child be taken from the custody of its parents" (sec. 14, p. 328). The record in this instance omits altogether any reference to this statutory requirement. Indeed, it appears that a formal judgment was not entered at all.

In considering a very similar statute the supreme court of Utah said: "But when a complaint is filed and one or more of the acts constituting delinquency are set forth, the court only acquires jurisdiction of the child for the purpose of investigating into its condition or conduct. Quite true, in some states, a formal complaint in writing may not be an essential, but it is made so in this state, and hence must be observed. But when the court has investigated the matters set forth in the complaint and finds some or all of the charges to be true, it does not follow, from that fact alone, that the state should forthwith be substituted in place of the parent or legal guardian and take full

control of the person of the child. All that the court has established so far is that the child is a delinquent in view of the provisions of the Act. The question as to whether the parent has been derelict in respect to his duty, or whether he is a competent person or not to have charge of the child, and whether he has forfeited his natural and legal right to continue the relation, has not been touched upon, and no finding or adjudication of that fact has been made. There is nothing, therefore, up to this point, in the proceedings upon which a judgment can be based substituting the state as guardian of the person of the child in place of the parent. The whole fabric of the law, as is clearly shown by all the decisions cited *supra,* rests upon this theory, and those laws are sustained by virtue of it. Until something is made to appear that the child is not cared and provided for in respect to the matters involved, there exists no reason for the state to take charge of the person of the child, and hence no right exists to do so under the Act. * * * We are constrained to hold, therefore, that before a child can be made a ward of the state, at least two things must be found: (1) That the child is a delinquent within the provisions of Chapter 117; and (2) that the parent or legal guardian is incompetent or has neglected and failed to care and provide for the child the training and education contemplated and required by both law and morals." (*Mill* v. *Brown,* 31 Utah, 473, 120 Am. St. Rep. 935, 88 Pac. 609.)

For the reasons indicated, the proceedings had in the district court of Silver Bow county were invalid, and the commitment affords no justification for the retention of the child.

It is ordered that Mamie Satterthwaite be released forthwith from her detention at the House of the Good Shepherd at Helena.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.